1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JUANITA JONES,

              Plaintiff,

    v.

KILOLO KIJAKAZI, acting
Commissioner of Social Security,

              Defendant.

No. 1:20-cv-01554-GSA

**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**

**(Doc. 21)**

## I.    <u>Introduction</u>

Plaintiff Juanita Jones ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 21, 22, 23.  After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision.  Plaintiff's appeal is therefore granted.

## II.    <u>Factual and Procedural Background[2]</u>

On August 26, 2015 Plaintiff applied for benefits alleging disability as of July 4, 2014.  AR 170–71.  The Commissioner denied the applications initially on October 14, 2015 and on reconsideration on January 25, 2016.  AR 78–86; 88–96.  Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on June 12, 2017.  AR 58–77.  On November 16, 2017 the ALJ issued a decision denying Plaintiff's application.  AR 15–29.  The Appeals

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 7 and 9.

[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well informed.  Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

Council denied review on September 25, 2020.  AR 1–3.  On October 30, 2020 Plaintiff filed a complaint in this Court.  Doc. 1.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

2

sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 7, 2014.  AR 20.  At step two the ALJ found that Plaintiff had the following severe impairments: osteoporosis and status post colon interposition surgery.  AR 20.  The ALJ also determined at step two that Plaintiff had the following non-severe impairments: restless leg syndrome, right distal radius fracture and left fifth metacarpal fracture status post-surgical repair; mild carpal tunnel syndrome right greater than left.  AR 20–21.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 21.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) with limitations on climbing and exposure to hazards including moving machinery and unprotected heights.  AR 21–24.  At step four the ALJ concluded that, considering her RFC, Plaintiff could perform her past relevant work as an accounting clerk.  AR 24.  Accordingly, the ALJ concluded

1
2

that Plaintiff was not disabled at any time since her alleged disability onset date of July 7, 2014.

AR 24.

3

### V.   Issues Presented

4
5
6
7

Plaintiff asserts two claims of error: 1) that the RFC was not supported by substantial evidence because the ALJ independently interpreted medical records without the aid of a medical expert rather than further developing the record with a consultative examination; and 2)  that the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints.

8
9

### A.   RFC; Failure to Develop the Record

### 1.   Applicable Law

10
11
12
13
14
15
16
17

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

18
19
20
21
22
23
24
25

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

26
27
28

 "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also*

1
2
3
4
5
6

20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

7
8
9
10
11
12
13
14
15

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150.  A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).  an ALJ is not qualified to interpret raw medical data and translate it into functional terms. *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008).

16

### 2.    Analysis

17
18
19
20
21
22
23
24
25
26

Disability Determination Service (DDS) doctors Reddy and Jackson reviewed Plaintiff's medical file at the initial and reconsideration levels on October 13, 2015 and January 1, 2016, respectively, and concluded that Plaintiff could perform light work with no other limitations.  AR 83–85, 92–94.  Their review covered records concerning Plaintiff's esophageal dilations and osteoporosis.  The ALJ accorded great weight to these opinions which she largely adopted into the RFC for light work, but noted that the doctors did not fully account for Plaintiff's increased risk of fracture due to osteoporosis which the ALJ accounted for with additional restrictions on climbing and exposure to hazards.  AR 24.

27
28

Plaintiff argues that the ALJ erred in relying on the DDS doctor's opinions as they did not review the records after July 2015 which accounted for the majority of the medical file.  Br. at 13,

1
2
3
4
5

Doc. 21 (citing AR 293–457).  Plaintiff contends the ALJ erred in independently reviewing those records and translating the same into functional terms without the aid of a medical expert.  Plaintiff contends the ALJ was required to develop the record and obtain an assessment of Plaintiff's physical limitations from a consultative examiner.

6
7
8
9
10
11
12
13
14
15
16
17
18
19

First, it is worth noting that there is no controlling authority to support the notion that an ALJ can never independently interpret medical records of any kind and translate the same into functional terms.  There is always a gap in time between the non-examining DDS physician's review at the initial/reconsideration levels and the ALJ's subsequent hearing decision.  Claimants routinely continue pursuing care in the interim thereby generating new medical records.  If the mere passage of time and presence of additional medical evidence in the record established ambiguity, a consultative examination would be required in every case.  Yet the regulations provide that the agency may obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case.  *See* 20 C.F.R. § 404.1519; *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) (unpublished) (noting there "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time.").

20
21
22
23
24
25
26
27
28

Rather than establishing an absolute bar on an ALJ's independent review of any medical evidence, cases where this issue has been resolved in the claimant's favor generally involve new injuries or conditions, worsening of existing conditions, and/or the ALJ independently interpreting raw medical data such as imaging or complex laboratory findings.  *See, e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019  WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in

adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall

in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1

compression deformity with worsened kyphosis . . ."); *Stevenson v. Colvin*, No. 2:15-CV-0463-

CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015) (holding that the ALJ erred in adopting

the functionality opinion of a non-examining state agency physician, an opinion which pre-dated

"plaintiff's treating records regarding the progression of his spinal impairments, which were

developed after the date of Dr. Pancho's opinion.").

Here, the records independently interpreted by the ALJ involved all three situations

described by the above cited caselaw, namely records of new impairments, worsening of existing

impairments, and complex imaging findings.  Accordingly, the Court finds error for the reasons

explained below.  Before delving into that reasoning, Defendant's waiver argument must be

addressed.  Defendant contends that Plaintiff waived the argument because her attorney conceded

at the administrative hearing that the record was complete.  Resp. at 7 (citing *Isaiah v. Saul*, Case

No. 1:19-cv-01085-SKO, 2020 WL 6305830 (E.D. Cal. Oct. 28, 2020) (concluding that the

claimant, represented by an attorney, waived any challenge to the completeness of the record by

affirming to the ALJ at the hearing that the record was complete); *Vasquez v. Saul*, Case No. 1:20-

cv-00502-SKO, 2021 WL 1736895 (E.D. Cal. Apr. 30, 2021) (same); *Russo v. Saul*, Case No. 1:19-

cv-01453-SKO, 2021 WL 632606 (E.D. Cal. Feb. 18, 2021).

In *Meanel*, the Ninth Circuit stated as follows:

> We now hold that, at least when claimants are represented by counsel, they must
> raise all issues and evidence at their administrative hearings in order to preserve
> them on appeal. The ALJ, rather than this Court, was in the optimal position to
> resolve the conflict between Meanel's new evidence and the statistical evidence
> provided by the VE. We will only excuse a failure to comply with this rule when
> necessary to avoid a manifest injustice, which will not occur here.

*Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)

The "manifest injustice" exception in *Meanel* has been interpreted as granting reviewing

7

1
2
3
4

courts discretion in applying the waiver doctrine. *See, e.g.*, *Rayborn v. Colvin*, No. 3:15-CV-01478-HZ, 2016 WL 5799348, at *5 (D. Or. Sept. 30, 2016) ("Finally, even if Meanel applies and Plaintiff waived the issue, I exercise my discretion to address it.").

5
6
7
8

Here, discretion counsels against imposing the waiver doctrine against Plaintiff with respect to her first argument for three reasons. First, Plaintiff is represented by a new attorney on appeal and the court hesitates to penalize Plaintiff by imputing her former counsel's error (if any) to current counsel.

9
10
11
12
13
14
15
16
17
18

Second, the testimony as to the completeness of the record was not as clear as Defendant contends. Rather, in the context of a conversation about admitting 16 pages of additional evidence submitted from Sutter Gould (exhibit 14F), the ALJ asked if he could admit "everything through 14F" to which the attorney responded "yes." AR 62. The ALJ then asked, "will we be able to close the record" to which the attorney also responded "yes." AR 63. The ALJ did not directly ask, nor did the attorney directly state, that the record was complete. The distinction is subtle but important under circumstances where Defendant asks the Court to dispense with Plaintiff's primary claim of error based on waiver.

19
20
21
22
23
24
25
26
27

Thirdly, the ALJ's error with respect to some of the records discussed below is not entirely related to the ALJ's failure to develop the record with a consultative examination (the argument Defendant contends is waived), but also related to lack of accuracy, clarity and detail as to the ALJ's conclusions regarding what those records showed on balance and the ALJ's resultant formulation of the RFC. Lastly, the RFC is not based on substantial evidence for the reasons explained below. The matter must therefore be remanded, irrespective of "completeness" of the record and irrespective of whether Plaintiff's counsel conceded at the hearing that the record was complete.

28

1

2

3

4

Turning now to the merits of Plaintiff's argument, Plaintiff contends the ALJ erred in independently interpreting records relating to her: 1) hand impairment, 2) digestive condition, 3) knee impairment, 4) back and neck impairment, and 5) osteoporosis.

5

6

7

8

9

10

11

As to her hand impairment, Plaintiff underscores that the DDS doctors did not review records relating to her hand surgeries (AR 299-309), or records relating to her mild carpal tunnel syndrome (AR 297). Plaintiff contends these records corroborate her complaints regarding inability to use her hands for repeatedly grasping objects which would be outcome determinative given the VE's testimony that someone limited to occasional handling and fingering could not perform her past work as an accounting clerk. AR 76.

12

13

14

15

16

17

18

19

20

21

22

23

The Court disagrees. Plaintiff's hand surgery took place in 2009. Treatment notes from follow up appointments in 2016 noted she had successfully healed her right distal radius fracture, had full wrist, thumb and finger range of motion. She presented with pain, tingling and numbness in the distribution of the median nerve. AR 299. Compression tests in January 2016 for carpal tunnel were initial positive on the right and equivocal on the left with 4 out of 5 grip strength in both hands. AR 299. An EMG was ordered. *Id.* Physical examination notes four months later noted that the EMG showed no evidence of compressive neuropathy. AR 297. Notwithstanding the diagnosis of mild carpal tunnel based on positive compression test and Phalen's test, the physician noted 5 out of 5 grip strength in both hands, painless wrist, thumb and finger range of motion, and intact sensation. AR 297. The physician recommended oral anti-inflammatory medication, wrist splints, activity modifications as needed, and to follow up as needed. AR 297.

24

25

26

27

28

These records did not support a limitation to occasional handling and fingering (1/3 of an 8-hour day). The ALJ did not err in independently interpreting the same. He did not translate raw medical data or complex findings into functional terms. The relevant functional terms were apparent on the face of the records with no deficiencies noted.

9

1

2

3

As to Plaintiff's back and neck impairments, Plaintiff underscores that the DDS physicians

4

did not review: 1) cervical MRI results noting 1mm annular disc bulge at C3-C4 and 1mm

5

protrusion at C5-C6 which flattened the thecal sac (impression: "minor discogenic degenerative

6

changes without significant canal or neural encroachment.") (AR 367-68); 2) physical therapy

7

records noting cervical flexion of 20 degrees (improved from 18 degrees but below the norm of 55

8

degrees) (AR 398); and 3) thoracic MRI noting accentuated kyphosis and multilevel mild facet

9

arthropathy at T9-L1.  Plaintiff contends the ALJ erred in independently interpreting these records

10

without obtaining a consultative examination.

11

The Court agrees.  The ALJ independently interpreted the MRI results and mischaracterized

12

other evidence supportive of limitations.  The former fact is not necessarily dispositive in and of

13

itself absent corresponding evidence of limitations.  Indeed, it is not the ALJ's burden to disprove

14

limitations.  Rather, the Plaintiff has the burden of putting forth evidence of disabling limitations

15

and an MRI in isolation does not establish corresponding limitations.  *See Ukolov v. Barnhart*, 420

16

F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.")

17

(citation omitted); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of

18

an impairment is insufficient proof of a disability" because the "claimant bears the burden of

19

proving that an impairment is disabling"); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("It is not

20

unreasonable to require the claimant, who is in a better position to provide information about his

21

own medical condition, to do so.").

22

23

Nevertheless, the ALJ mischaracterized the physical therapy records which did show

24

limitations.  The ALJ focused solely on Plaintiff's "improved" range of motion and characterized

25

the range of motion examinations as generally "benign."  AR 23.  Although Plaintiff's ROM

26

improved slightly after 19 physical therapy sessions as of May 2016, her ROM numbers were

27

roughly half of the normal range essentially across the board.  AR 398.  The ALJ also cited

28

1
2
3
4

Plaintiff's improved ROM in subsequent physical therapy records in November 2016.   Those records noted a non-specific 25% improvement in thoracic ROM with no reference point indicated. AR 429.

5
6
7
8
9
10
11
12
13
14

Confusingly, at the conclusion of the paragraph discussing these issues the ALJ appeared to cut his thought short mid-sentence after summarizing the cervical and thoracic MRI results.  The sentence begins "These are" at which point the sentence and paragraph end.  AR 23.  Thus, it's not clear what the ALJ's thoughts on the MRI results were even assuming he was qualified to independently interpret the same. This further detracts from the clarity of the opinion which, coupled with the mischaracterization of Plaintiff's range of motion, was an error independent of the ALJ's lay interpretation of the MRI results.  Defendant did not respond to Plaintiff's argument concerning the ALJ's error with respect to the cervical and thoracic MRI and physical therapy results.  Resp. at 5-8.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

The DDS physicians also did not review the DEXA scan performed in October 2015 noting worsening osteoporosis in Plaintiff's spine (albeit 0.5%).  AR 296, 345.  They did not review a 2015 knee x-ray noting minimal arthritis or associated clinical examinations revealing crepitus, positive McMurray's test indicative of internal tears (though no soft tissue imaging was obtained), positive grind and compression tests, reduced range of motion, and diagnosis of left knee patellofemoral chondromalacia and malalignment.  AR 298, 334.  Although the ALJ noted these impairments were treated conservatively, the extent to which the deficits found on physical examination in connection with arthritic findings found on x-ray (albeit mild), gave rise to functional limitations-- an issue beyond the scope of the ALJ's expertise to address independently. In addition, the clinical significance and associated functional deficits potentially attributable to a 0.5% reduction in spinal bone density on DEXA scan were also matters beyond the scope of the ALJ's expertise to address independently.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Finally, Plaintiff underscores that the DDS physicians did not have access to additional records regarding her esophageal dilations in connection with accidental lye ingestion as a child, and records noting a stretched and tortuous colonic interposition for which the only option was a jejunal interposition that was not recommended until absolutely necessarily.  AR 329-31, 346-47, 351-53, 366, 371-73, 377-78, 400-22.  Although these records were rather dense and potentially unsusceptible to a lay understanding, the DDS physicians did review pre-existing records related to this condition (indeed those were essentially the only records they reviewed).  Moreover, it appears the only alleged limitation associated with this condition was Plaintiff's contention that she required 6-7 bowel movements a day, which the ALJ found uncorroborated by the medical records which reflect Plaintiff reported normal bowel movements to her physicians.  Plaintiff does not contend that the later dated records support that contention or any other work-related limitation.  Nor is it clear how a consultative physical examination would aid in confirming or denying the existence of that alleged limitation.

Finally, the Court notes that Defendant's argument in response was largely limited to the waiver issue discussed above and a recitation of the applicable law governing the ALJ's duty to develop the record with a consultative examination.  Defendant provided one to two paragraphs of substantive argumentation addressing whether the extensive varied records underscored by Plaintiff triggered the duty.  Defendant adequately addressed the carpal tunnel issue about which the Court agrees (as stated above). With respect to the cervical and thoracic MRI's and physical therapy records, Defendant provided no discussion.  With respect to the DEXA scans documenting worsening osteoporosis, Defendant offered one conclusory sentence contending the ALJ appropriately accounted for the condition by restricting climbing and hazard exposure.  With respect to the knee impairment, Defendant relied only on the fact that it was treated conservatively. These arguments by defendant are not sufficient.

12

1

2

3         In sum, the ALJ independently reviewed the majority of the medical records in the file.  The

4    ALJ summarized the records and Plaintiff's testimony in one page each, and tied the RFC finding

5    together in one paragraph noting: 1) conservative treatment, 2) minimal physical findings, 3)

6    improving range of motion, and 4) lack of gate abnormalities.  Granted, the records independently

7    reviewed by the ALJ did largely document mild findings treated conservatively.  Nevertheless,  the

8    records involved new conditions, a worsening of existing conditions, and contained findings

9    unsusceptible to a lay understanding (X-rays, MRIs, DEXA scans).  The physical therapy records

10   documented significant range of motion deficits in Plaintiff's cervical and thoracic spine, and

11   physical examinations of Plaintiff's knee noted reduced range of motion and other deficits as well.

12   Those deficits suggest that the "mild" findings on MRI and X-ray of these body parts may not have

13   fully captured the clinical picture regarding those conditions.  The DDS physicians did not review

14   these records or any pre-existing records documenting similar findings relating to Plaintiff's

15   cervical pain, thoracic pain, osteoporosis or knee impairments.

16        Under these circumstances, the ALJ should have obtained a consultative examination to

17   assess Plaintiff's overall physical condition as of her DLI and address any resultant impact on her

18   ability to perform work functions.  *See, e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ

19   formulated claimant's residual functional capacity based on magnetic resonance images without

20   the benefit of any medical opinion about the functional limitations attributable to the impairments

21   depicted in the images); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019  WL 79016, at *5

22   (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions

23   which were rendered before "plaintiff sustained a fall in November 2014" and before "an April

24   2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis

25   . . ."); *Stevenson v. Colvin*, No. 2:15-CV-0463-CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27,

26

27   2015) (holding that the ALJ erred in adopting the functionality opinion of a non-examining state

28

agency physician, an opinion which pre-dated "plaintiff's treating records regarding the progression

of his spinal impairments, which were developed after the date of Dr. Pancho's opinion.").

### B.      Plaintiff's Subjective Symptomology

#### 1.      Applicable Law

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical

testimony and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  A

claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental

impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding

subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir.

2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective

medical evidence of an impairment that could reasonably be expected to produce some degree of

the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the

claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the

intensity and persistence of [the claimant's] symptoms to determine the extent to which the

symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and

convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p

at *10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully

corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in

determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  S.S.R. 16-3p at 1-2.

1

2

F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

3

4

The ALJ must examine the record as a whole, including objective medical evidence; the

5

claimant's representations of the intensity, persistence and limiting effects of his symptoms;

6

statements and other information from medical providers and other third parties; and any other

relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

7

### 2.   Analysis

8

9

Plaintiff argues that "meaningful judicial review of the ALJ's reasons for rejecting

10

Plaintiff's testimony in this case is not possible because such reasons are 'inescapably linked' to

11

the ALJ's erroneous conclusions regarding the medical evidence."  Br. at 18 (citing *Vaughn v.*

12

*Berryhill*, 242 F. Supp. 3d 998, 1010 (E.D. Cal. 2017) (ALJ's evaluation of claimant's credibility

13

was "inescapably linked to conclusion regarding the medical evidence [therefore] "it cannot be

14

adequately determined at this time whether the ALJ's decisions regarding [claimant's credibility]

15

were proper and supported by substantial evidence.").

16

17

The Court agrees.  An analysis of the ALJ's reasoning for rejecting Plaintiff's subjective

18

symptomology would be redundant, as the ALJ's reasoning was buttressed by an erroneous and

19

improper independent interpretation of the records concerning her cervical impairment, thoracic

20

impairment, osteoporosis, and knee impairment.  This is not the case with respect to the ALJ's

21

analysis of Plaintiff's allegations concerning her wrist problems and bowel movement frequency,

22

as the ALJ committed no error in independently interpreting the corresponding medical evidence

23

and concluding that the medical evidence did not support the allegations, as explained above.

24

### VI.   Remand for Further Proceedings

25

26

The ALJ erred in his interpretation of the records of Plaintiff's cervical impairment, thoracic

27

impairment, osteoporosis, and knee impairment.  Remand is therefore appropriate for the ALJ to

28

obtain a consultative examination to determine Plaintiff's overall physical functionality as of her

DLI, to articulate a new RFC as appropriate, provide a new analysis of Plaintiff's subjective testimony in light of the consultative examiner's findings, and to proceed through the sequential analysis as appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### VII.   Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is granted.  The Clerk of Court is directed to enter judgment in favor of Plaintiff Juanita Jones and against Defendant Kilolo Kijakazi, acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **January 7, 2022**                          **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE